# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent-Petitioner,

v.

Stephon Robinson, Petitioner-Respondent.

Appellate Case No. 2017-000990

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Barnwell County
Doyet A. Early III, Circuit Court Judge

---

Opinion No. 27883
Heard January 10, 2019 – Filed May 8, 2019

---

## AFFIRMED AS MODIFIED

---

Appellate Defender Victor R. Seeger, of Columbia, for Petitioner-Respondent.

Attorney General Alan M. Wilson, Deputy Attorney General Donald J. Zelenka and Senior Assistant Deputy Attorney General J. Benjamin Aplin, all of Columbia; and Solicitor James Strom Thurmond Jr., of Aiken, all for Respondent-Petitioner.

---

**JUSTICE JAMES:** Stephon Robinson was convicted of first-degree burglary and possession of a weapon during the commission of a violent crime. Robinson appealed, and the court of appeals remanded the matter to the trial court to conduct an on-the-record balancing test regarding the admissibility of certain prior convictions the State used to impeach Robinson's credibility pursuant to Rule 609(a)(1) of the South Carolina Rules of Evidence. *State v. Robinson*, Op. No. 2014-UP-068 (S.C. Ct. App. filed Feb. 19, 2014). After the remand hearing, the trial court ruled Robinson's prior convictions were properly admitted; consequently, the burglary and weapon convictions remained in place.

Robinson appealed again, and the court of appeals issued an unpublished opinion holding that although the trial court erred in applying two of the five factors we set forth in *State v. Colf*,[1] any error in the admission of Robinson's prior convictions for impeachment was harmless. *State v. Robinson*, Op. No. 2017-UP-065 (S.C. Ct. App. filed Feb. 1, 2017). We granted cross-petitions for writs of certiorari to review the court of appeals' decision. We affirm the court of appeals as modified. The court of appeals reached the correct result by affirming Robinson's convictions; however, as we will discuss below, the court of appeals' analysis of the admissibility of the prior convictions was erroneous.

## I. FACTUAL AND PROCEDURAL HISTORY

At around 2:00 p.m. on Sunday, February 20, 2011, Eddie Williams was relaxing in his home when he heard a car pull into his driveway. Williams testified he heard a knock at the front door, looked through a window, and saw Robinson and the white car Robinson had driven to his house on prior occasions. Williams ignored the knock at the door because he figured Robinson had come to the house to play video games with his nephew, who was not home. Williams testified Robinson got back into the car and left. Williams made his lunch and retired to his bedroom to watch a NASCAR race.

Williams testified that about ten minutes later, he again heard a car pull into his driveway and then heard his front door being kicked in. He grabbed a handgun from his nightstand and went to investigate. Williams testified he started down the hallway and confronted Robinson face-to-face. Williams testified he also saw

---

[1] 337 S.C. 622, 627, 525 S.E.2d 246, 248 (2000) (adopting the five-factor test used by federal courts to assist in determining whether the probative value of a prior conviction outweighs its prejudicial effect for purposes of impeachment under Rule 609, SCRE).

Robinson's brother (Reginald Felder) and another individual he did not recognize inside his home. Williams fired his handgun, and the intruders ran away. Williams testified Robinson also had a handgun and fired it in his direction while fleeing the home. Williams testified he then retrieved a shotgun and fired it into the air outside the house as the three individuals escaped in a white car. Williams called law enforcement around 2:20 p.m. and told police the intruders were driving a white four-door vehicle he thought to be a Pontiac. In two separate photo lineups, Williams identified Robinson and Robinson's brother as two of the three intruders. The third intruder was never identified.

On cross-examination, Robinson attacked Williams' credibility, establishing that Williams initially failed to tell law enforcement he had fired his handgun. Williams admitted that on the day of the incident, he falsely informed law enforcement that the bullet holes in his home were not from the burglary but had been there since he purchased the home. Williams testified he was not truthful with law enforcement because he thought his handgun had to be registered in order for it to be legal. The gun had been reported stolen in Beaufort County, but Williams testified he was unaware of this when he purchased the gun.

Shelly Leanna Gunnels testified she had been in an "on and off" relationship with Robinson for the last six or seven years. She testified she allowed Robinson to use her white Pontiac sedan "whenever he wanted to use it." Gunnels testified Robinson borrowed her car on February 19 and returned it on February 20 (the day of the incident) "around that afternoon."

At the close of the State's case-in-chief, the trial court informed Robinson of his right to testify in his defense and warned him the State might be permitted to impeach his credibility with his prior criminal convictions. When Robinson stated he wanted to testify, the State requested to impeach him pursuant to Rule 609(a)(1), SCRE, using 2009 convictions for second-degree burglary and attempted strong arm robbery and two 2007 Georgia convictions for breaking into an automobile. As we will discuss, Rule 609(a)(1) provides that prior convictions punishable by imprisonment for more than one year "shall be admitted" to impeach the credibility of a defendant who testifies, "if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." This test places the burden on the State to convince the trial court the evidence should be admitted.

Robinson objected, arguing "the prejudicial value outweighs the probative value." Without conducting the requisite on-the-record analysis of the *Colf* factors,

the trial court ruled the strong arm robbery conviction and the two breaking and entering into an automobile convictions were admissible. The trial court ruled the second-degree burglary conviction was also admissible but ruled it had to be referred to generically as a "prior felony conviction carrying more than one year in prison." The use of the burglary conviction for impeachment is not an issue in this appeal.

Robinson testified and denied any involvement in the incident but admitted to knowing Williams and previously going to Williams' house a "good bit of times" to "get things from [him]." Robinson later clarified he knew Williams because Williams sold him marijuana. Robinson testified he was at his own house with his brother and cousin at the time of the incident. Robinson testified he borrowed Gunnels' vehicle the night before the burglary so he, his brother, and his cousin could go to a club that night. Robinson testified he took the car back to Gunnels around noon or 1:00 p.m. the next day, which would have been prior to the burglary.

On cross-examination, the State questioned Robinson about his prior convictions as follows:

**Q:** Are you the same Stephon Robinson that was convicted of strong arm robbery in 2009?[2]

**A:** Yes, sir.

**Q:** And you're the same Stephon Robinson that had another felony conviction in 2009 that carried more than a year, aren't you?

**A:** Yes, sir.

**Q:** And you're the same Stephon Robinson that in 2007 had two convictions for breaking and entering automobiles with the intent to commit a felony or theft?

**A:** Yes, sir.

---

[2] As noted above, the State originally informed the trial court this was an *attempted strong arm robbery* conviction but then told the jury it was a *strong arm robbery* conviction. There was no objection to this distinction by Robinson, and there is no sentencing sheet in the record to allow us to discern which offense is correct. This discrepancy does not affect our analysis. For consistency, we will refer to this prior conviction as a strong arm robbery conviction.

**Q:** But you want this jury to believe that you don't know anything about this?

**A:** Yes, sir, because for one, I plead guilty to all of my charges and take my responsibility because I know I was guilty of those charges. And two, that was back in my past when I did stupid things to get a little money to do things because I didn't have. But my parents recently passed away and we got insurance money and all kind of money back off that, and I have no reason to kick in this man's door. Nothing.

**Q:** Let me ask you this, in 2007, was your brother with you whenever you broke into the cars?

**A:** Yes, sir.

**Q:** Did he plead guilty to his charges?

**A:** Yes, sir.

**Q:** And in 2009, with the strong arm robbery, was your brother with you then?

**A:** Yes, sir.

**Q:** Who else was with you?

**A:** No one.

**Q:** You and your brother?

**A:** Yes, sir.

**Q:** And that other felony charge from 2009, was your brother with you then?

**A:** No, sir.

**Q:** He wasn't?

**A:** No, sir. You talking about the burglary, right?

**Q:** The charge that you pled guilty to in 2009, the felony charge that carried more than a year.

**A:** Yes, sir, yes, sir.

**Q:** Was your brother with you on that?

**A:** No, sir.

**Q:** Okay. So in three out of the four times when you committed a crime, your brother was with you?

**A:** Yes, sir.

Arthur Wallace, Robinson's cousin, testified he, Robinson, and Reginald Felder went to the club together the night before the incident in Gunnels' vehicle and that Robinson returned Gunnels' vehicle to her around noon or 1:00 p.m., which would have been before the burglary. Wallace denied their involvement in the burglary and testified that he, Robinson, and Felder all hung out together at Robinson's house that day. The State impeached Wallace's credibility with a 2008 second-degree burglary conviction. Robinson does not challenge Wallace's impeachment in this appeal.

Reginald Felder (Robinson's brother) similarly recounted the three going to the club the previous night and hanging out together at Robinson's house on the day of the incident. Felder testified Robinson returned Gunnels' vehicle around 1:00 p.m. the day of the burglary. The State impeached Felder's credibility with the same 2007 Georgia convictions for breaking into an automobile and the same 2009 conviction for strong arm robbery that were used to impeach Robinson. Robinson does not challenge Felder's impeachment in this appeal.

During Robinson's closing argument, Robinson attacked Williams' credibility. During the State's closing argument, the State acknowledged the importance of credibility in the case and commented on the credibility of each of the witnesses. The trial court gave the following limiting instruction on Robinson's prior convictions in its charge to the jury:

> You also heard in this case evidence that the defendant had been, in the past, convicted of crimes other than the one for which he is now on trial. This evidence may be considered by you if you conclude it's true only in deciding whether the defendant's testimony is believable or credible and for no other purpose. You must not consider the

> defendant's prior record as any evidence of the defendant's
> guilt of the charge we are trying here today.

Robinson appealed his convictions.  The court of appeals found the trial court erred by failing to conduct a meaningful on-the-record balancing test when deciding whether to admit Robinson's prior convictions and remanded the matter to the trial court for the sole purpose of conducting the balancing test.[3]  *State v. Robinson*, Op. No. 2014-UP-068 (S.C. Ct. App. filed Feb. 19, 2014).  On remand, the trial court conducted a hearing and heard arguments as to whether Robinson's prior convictions were admissible under Rule 609(a)(1) and *State v. Colf*.  After the hearing, the trial court issued an order addressing each of the *Colf* factors and concluded "the probative value of the introduction of [Robinson's] prior record outweighed any prejudice to him under Rule 609(a)(1), SCRE."  The trial court denied Robinson's motion for a new trial.

Robinson again appealed.  The court of appeals addressed only two of the five *Colf* factors, held the trial court erred in its application of those two factors, but affirmed Robinson's convictions because "any error in the admission of Robinson's prior convictions was harmless."  *State v. Robinson*, Op. No. 2017-UP-065 (S.C. Ct. App. filed Feb. 1, 2017).  The court of appeals did not address the remaining three *Colf* factors and thus did not determine whether the prior convictions were properly admitted after an analysis of all five *Colf* factors.  We granted both Robinson's and the State's petitions for writs of certiorari.

## II.  STANDARD OF REVIEW

In criminal cases, appellate courts sit to review errors of law only.  *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).  "The admission of evidence concerning past convictions for impeachment purposes remains within the trial [court's] discretion, provided the [trial court] conducts the analysis mandated by the evidence rules and case law."  *State v. Dunlap*, 346 S.C. 312, 324, 550 S.E.2d 889, 896 (Ct. App. 2001).  "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."  *State v. Douglas*, 369 S.C. 424, 429-30, 632 S.E.2d 845, 848 (2006).

---

[3] *See State v. Scriven*, 339 S.C. 333, 344, 529 S.E.2d 71, 76 (Ct. App. 2000) (providing a trial court *must* conduct "a meaningful analysis to balance the impeachment value of [a defendant's] prior convictions, if any, against the prejudicial impact, as clearly required under Rule 609(a)(1)").

# III. DISCUSSION

Both Robinson's and the State's arguments revolve around their perception of a correct application of the *Colf* factors in determining whether Robinson's prior convictions were ultimately admissible at trial pursuant to Rule 609(a)(1), SCRE. Robinson argues the court of appeals correctly applied the two factors it discussed but erred by not addressing the remaining factors and not ruling on the ultimate admissibility of his prior convictions. Robinson also argues the error in admitting the prior convictions was not harmless beyond a reasonable doubt. The State argues the court of appeals erred in its application of the two factors it did discuss.

In discussing the issues pertinent to this appeal, we will attempt to clarify the approach that must be undertaken by a trial court when determining whether to admit or exclude evidence of prior convictions of a witness for impeachment purposes.

## A. Rule 609, SCRE

Rule 609 of the South Carolina Rules of Evidence governs the admissibility of a witness's prior convictions for purposes of impeachment. Rule 609 prescribes varying standards for admissibility of evidence of prior convictions. In pertinent part, Rule 609 provides:

> **(a) General Rule.** For the purpose of attacking the credibility of a witness,
>
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.
>
> . . . .

**(b) Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Rule 609(a) invokes three impeachment scenarios. First, under Rule 609(a)(1), evidence that a witness other than an accused has been convicted of a crime punishable by death or imprisonment for more than one year (in the jurisdiction where the conviction occurred) is admissible, subject to Rule 403, SCRE. Under Rule 403, evidence of such a conviction "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Rule 403 test places the burden upon the opponent of the evidence to establish inadmissibility pursuant to Rule 403. Second, under Rule 609(a)(1), when the accused chooses to testify during his trial, if the State seeks to introduce impeachment evidence that the accused has been convicted of a crime punishable by imprisonment for more than one year, the evidence is admissible if the State establishes the probative value of admitting the evidence outweighs its prejudicial effect upon the accused. Third, under Rule 609(a)(2), if a witness, even an accused, has been convicted of a crime involving dishonesty or false statement, evidence of such a conviction shall be admitted regardless of the maximum punishment and regardless of the probative value or prejudicial effect of the evidence. *See State v. Bryant*, 369 S.C. 511, 517, 633 S.E.2d 152, 155 (2006).

Rule 609(b) invokes one impeachment scenario. Evidence of a conviction of any kind is not admissible if more than ten years has elapsed from the date of conviction or the release of the witness from confinement for that conviction, whichever is the later date, unless the proponent of the evidence establishes that the probative value of the conviction, supported by specific facts and circumstances,

substantially outweighs its prejudicial effect. Rule 609(b) includes notice requirements and establishes a presumption against the admissibility of these "remote" convictions, and the State bears the burden of substantially overcoming the presumption.

Rule 609(a)(2) requires no balancing test for admissibility of a prior conviction for a crime involving dishonesty or false statement. However, Rule 609(a)(1) and Rule 609(b) require the trial court to balance—in three varying degrees—the probative value of evidence of a prior conviction and the degree of prejudice to the opponent of the evidence (as noted, the Rule 403 test also requires the trial court to consider confusion of the issues, misleading the jury, etc.). Even though these three Rule 609 admissibility tests differ from one another, we have, through *State v. Colf*, provided a uniform set of factors for the trial court to consider when applying each test.

In *State v. Colf*, we considered the admissibility of a criminal defendant's convictions under Rule 609(b), as the defendant's trial took place more than ten years from the defendant's release from confinement for the prior convictions. 337 S.C. 622, 625-26, 525 S.E.2d 246, 247-48 (2000). In *Colf*, we adopted the five-factor analysis employed by federal courts when weighing the probative value of prior convictions against the prejudicial effect to the accused. *Id.* at 627, 525 S.E.2d at 248. These factors include:

1) The impeachment value of the prior crime.

2) The point in time of the conviction and the witness's subsequent history.

3) The similarity between the past crime and the charged crime.

4) The importance of the defendant's testimony.

5) The centrality of the credibility issue.

*Id.* "These factors are not exclusive; trial courts should exercise their discretion in light of the facts and circumstances of each particular case." *Id.* Although *Colf* focused on the admission of prior convictions more than ten years old under Rule 609(b), our courts have also consistently applied these factors for purposes of a Rule 609(a)(1) analysis. *See, e.g., Bryant*, 369 S.C. at 517 n.1, 633 S.E.2d at 155 n.1.

To summarize, Rule 609(a)(2) contemplates one impeachment scenario, that being for convictions of crimes involving dishonesty or false statement, with automatic admissibility regardless of who the witness is and regardless of punishment or resulting prejudice. Rule 609(a)(1) and Rule 609(b) contemplate three impeachment scenarios with three different admissibility standards: (1) under Rule 609(a)(1), if the witness is someone other than the accused and has a prior conviction of a crime punishable by death or imprisonment for more than one year, the trial court must balance the *Colf* factors and determine whether, under Rule 403, the probative value of the conviction is substantially outweighed by the danger of unfair prejudice and/or other relevant considerations set forth in Rule 403. The burden of establishing inadmissibility of the conviction is upon the opponent of the evidence; (2) under Rule 609(a)(1), if the witness is the accused and has a prior conviction of a crime punishable by death or imprisonment for more than one year, the trial court must balance the *Colf* factors and determine whether the probative value of the conviction outweighs its prejudicial effect to the accused. The burden of establishing admissibility is upon the State, the proponent of the evidence; (3) under Rule 609(b), if the conviction is a "remote" conviction (even a conviction of a crime involving dishonesty or false statement under Rule 609(a)(2)), the trial court must balance the *Colf* factors and determine whether the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. Rule 609(b) establishes a presumption against the admissibility of a remote conviction and places the burden of establishing admissibility of the conviction upon the proponent of the evidence.

While the same *Colf* factors are to be considered in determining admissibility under all three of the 609(a)(1) and 609(b) impeachment scenarios, the practitioner and the trial bench should be mindful of the different admissibility standards in the three scenarios. We also note that these rules apply in civil cases, except of course the portion of Rule 609(a)(1) prescribing the standard to be applied when the witness is the accused in a criminal case. This Court and the court of appeals have encountered various circumstances under which a Rule 609/*Colf* analysis was required. In the instant case, we have the opportunity to clarify some of the issues faced by both trial courts and appellate courts when Rule 609(a)(1) is in play.

In *Bryant*, the defendant was on trial for murder and unlawful possession of a weapon by a convicted felon; he testified at trial and was impeached with two prior firearms convictions. 369 S.C. at 514-15, 633 S.E.2d at 154-55. When considering whether those convictions were automatically admissible under Rule 609(a)(2) as crimes of dishonesty or false statement, we stated: "Violations of narcotics laws are generally not probative of truthfulness. Furthermore, a conviction for robbery,

burglary, theft, and drug possession, beyond the basic crime itself, is not probative of truthfulness. Likewise, firearms violations also are not generally probative of truthfulness." *Id.* at 517, 633 S.E.2d at 155-56 (internal citations omitted). Finding the defendant's prior firearm convictions did not involve dishonesty or false statement, we explained the probative value of the convictions should have been weighed against their prejudicial effect prior to their admission under Rule 609(a)(1). *Id.* at 517, 633 S.E.2d at 156. We ultimately held it was error for the trial court to admit the defendant's prior firearm convictions. *Id.* at 518, 633 S.E.2d at 156. We reasoned the defendant's prior firearms convictions "had nothing to do with [the defendant's] credibility and, their admission was more prejudicial than probative, especially in light of the offenses for which he was on trial."[4] *Id.*

In *State v. Broadnax*, the defendant was on trial for armed robbery and kidnapping; he testified at trial and was impeached with his prior armed robbery convictions. 414 S.C. 468, 471-72, 779 S.E.2d 789, 790-91 (2015). The trial court admitted the defendant's armed robbery convictions pursuant to Rule 609(a)(2) and the court of appeals' prior decision in *State v. Al-Amin*, 353 S.C. 405, 578 S.E.2d 32 (Ct. App. 2003). *Broadnax*, 414 S.C. at 471, 779 S.E.2d at 790. Overruling *Al-Amin* and reaffirming the rule articulated in *Bryant*, we held armed robbery is not a crime of dishonesty or false statement and, therefore, the defendant's prior convictions were not admissible under Rule 609(a)(2). *Broadnax*, 414 S.C. at 476, 779 S.E.2d at 793. We explained that "for impeachment purposes, crimes of 'dishonesty or false statement' are crimes in the nature of *crimen falsi* 'that bear upon a witness's propensity to testify truthfully.'" *Id.* (quoting *Adams v. State*, 644 S.E.2d 426, 432 (Ga. Ct. App. 2007)). We emphasized our holding did "not preclude the admission of prior convictions for armed robbery; rather, it merely enables a trial judge to conduct a balancing test pursuant to Rule 609(a)(1) when the State seeks prior convictions for armed robbery to impeach a criminal defendant's testimony." *Id.* at 478, 779 S.E.2d at 794.

### B. Application of the *Colf* Factors and Rule 609(a)(1) in this Case

---

[4] Perhaps a clearer statement in *Bryant* would have been that the prior firearms convictions "had little" to do with the defendant's credibility, as we did not intend to hold prior firearms convictions are per se inadmissible under Rule 609(a)(1) and Rule 609(b). We can envision circumstances in which such prior convictions may well be admissible, provided the trial court conducts the requisite balancing test and rules accordingly.

Robinson's prior convictions include a 2009 conviction for second-degree burglary, a 2009 conviction for strong arm robbery, and two 2007 Georgia convictions for breaking and entering into an automobile with the intent to commit a felony or theft. As previously noted, the 2009 second-degree burglary conviction was "sanitized" when the trial court allowed the State to elicit testimony that Robinson had a prior felony conviction carrying more than one year in prison. The introduction of this conviction is not an issue in this appeal.

The parties obviously disagree as to the admissibility of the strong arm robbery conviction and the two breaking and entering into an automobile convictions. Robinson's strong arm robbery conviction and his two breaking into an automobile convictions are not automatically admissible as crimes of dishonesty or false statement under Rule 609(a)(2); therefore, the trial court was required to conduct an analysis under Rule 609(a)(1) and *State v. Colf* to determine whether the probative value of admitting these prior convictions outweighed the prejudicial effect to Robinson. As we noted above, on remand, the trial court considered all five *Colf* factors and determined the convictions were admissible under Rule 609(a)(1); however, the court of appeals reviewed only two of the five factors.

## 1. The impeachment value of the prior crime.

"The starting point in the analysis is the degree to which the prior convictions have probative value, meaning the tendency to prove the issue at hand—the witness's propensity for truthfulness, or credibility." *State v. Black*, 400 S.C. 10, 21, 732 S.E.2d 880, 886 (2012). "The tendency to impact credibility . . . determines the impeachment value of the prior conviction. Impeachment value refers to how strongly the nature of the conviction bears on the veracity, or credibility, of the witness." *Id.* at 21-22, 732 S.E.2d at 887. The purpose of the impeachment is not to show the witness is a bad person but rather to show background facts which impact the witness's credibility. *Id.* at 22, 732 S.E.2d at 887.

The trial court provided the following analysis regarding the impeachment value of Robinson's prior crimes:

> This Court finds the admission of the four prior convictions has value for impeachment purposes and that the prejudicial effect of the admission of the prior convictions, if any, is not outweighed by their admission. While no specific details of the prior convictions were provided to this Court or the jury in this case, the mere fact

> that the Defendant had twice been convicted of serious crimes within a few years of the alleged offense would tend to impact the Defendant's credibility. Simply put, convictions for breaking into motor vehicles and strong-arm robbery don't imply that the accused was an armed burglar, as was alleged in this case, but they do imply that the accused is not someone to be trusted - that he might not be credible.

Citing *Black*, 400 S.C. at 21-22, 732 S.E.2d at 887, and *Bryant*, 369 S.C. at 517, 633 S.E.2d at 155, the court of appeals concluded the trial court erred in finding Robinson's prior convictions had impeachment value, reasoning South Carolina courts have found prior convictions for robbery, burglary, and theft are not probative of truthfulness. This was error.

In *Black*, the defendant's only corroborating witness was impeached using two manslaughter convictions that were more than ten years old. 400 S.C. at 15, 732 S.E.2d at 883. Because of the remoteness of the prior convictions, under Rule 609(b), the convictions were only admissible if the probative value "substantially" outweighed the prejudicial effect. *Id.* at 18, 732 S.E.2d at 885. This is a more strenuous admissibility test than the one called for under Rule 609(a)(1). When employing a *Colf* analysis and addressing the impeachment value factor, we stated, "A rule of thumb is that convictions that rest on dishonest conduct relate to credibility, whereas crimes of violence, which may result from a myriad of causes, generally do not." *Id.* at 22, 732 S.E.2d at 887. We noted that although the prior convictions arguably raised concerns regarding the witness's general character, it is more narrowly the witness's propensity for telling the truth that is properly placed at issue under Rule 609. *Id.* at 23, 732 S.E.2d at 887. We held, "The manslaughter convictions, while crimes of violence, are not particularly probative of the specific trait of truthfulness; consequently, their impeachment value is limited. . . . In this case, the trial court did not relate any specific facts or circumstances, other than the mere existence of the convictions, that made them particularly probative of [the witness's] credibility." *Id.* at 23-24, 732 S.E.2d at 887-88.

As mentioned above, in *Bryant*, when we discussed the possibility of a prior conviction's automatic admissibility under Rule 609(a)(2), we stated, "[A] conviction for robbery, burglary, theft, and drug possession, beyond the basic crime itself, is not probative of truthfulness." 369 S.C. at 517, 633 S.E.2d at 155. Here, the court of appeals applied our statement out of context in finding Robinson's prior convictions were not probative of credibility for purposes of a Rule 609(a)(1)

analysis. Although prior convictions for robbery, burglary, theft, and drug possession are not crimes of dishonesty or false statement, which would result in automatic admissibility under Rule 609(a)(2), such convictions may still have impeachment value under Rule 609(a)(1). If the court of appeals' conclusion regarding this factor is carried to its logical extreme, no convictions would ever have impeachment value under Rule 609 unless they were crimes of dishonesty or false statement admitted under Rule 609(a)(2). Rule 609(a)(2) would inevitably swallow Rule 609(a)(1).

Even though Robinson's convictions for strong arm robbery and breaking and entering automobiles are not crimes involving dishonesty or false statement within the meaning of Rule 609(a)(2), that does not rule out the existence of impeachment value in each one of these prior offenses. The trial court observed, "Simply put, convictions for breaking into motor vehicles and strong-arm robbery don't imply that the accused was an armed burglar, as was alleged in this case, but they do imply that the accused is not someone to be trusted - that he might not be credible." It was within the trial court's discretion to conclude that because Robinson has prior convictions for such offenses, he legitimately might not be considered credible. *See Black*, 400 S.C. at 21-22, 732 S.E.2d at 887 ("Impeachment value refers to how strongly the nature of the conviction bears on the veracity, or credibility, of the witness."). The trial court did not abuse its discretion in finding Robinson's prior convictions had impeachment value.

## 2. The point in time of the conviction and the witness's subsequent history.

Robinson's prior convictions were in 2007 and 2009. He was tried for the burglary of Williams' residence in 2011. The trial court found Robinson's prior convictions revealed a continuing pattern of criminal behavior that could legitimately impact his credibility in the eyes of the jury. The court of appeals did not address this factor.

Robinson acknowledges the temporal proximity of his prior convictions to his current charges. However, Robinson contends the trial court erred by mentioning in its remand order what the sentences were for his convictions, arguing that while there was temporal proximity, "the jury did not and should not have known what the sentences were for each of Robinson's prior convictions." This argument has no merit, as the jury heard no evidence of the length of the sentences for the prior convictions. The trial court simply addressed the "subsequent history" portion of this *Colf* factor by comparing Robinson's prior releases from confinement to the

timing of the instant crime. An analysis of the sentences illustrates closeness in time between the prior offenses and the offense for which Robinson was on trial, revealing a pattern of behavior that legitimately evoked questions of Robinson's credibility. The trial court did not abuse its discretion in weighing this factor as it did.

### 3. The similarity between the past crime and the charged crime.

"[E]vidence of similar offenses inevitably suggests to the jury the defendant's propensity to commit the crime with which he is charged. This risk is not eliminated by limiting instructions." *Colf*, 337 S.C. at 628, 525 S.E.2d at 249. "[W]hen the prior offense is similar to the offense for which the defendant is on trial, the danger of unfair prejudice to the defendant from impeachment by that prior offense weighs against its admission." *Bryant*, 369 S.C. at 517-18, 633 S.E.2d at 156.

Robinson dwells heavily on this point and claims the trial court erred in its application of this factor. The trial court found there was very little similarity between the past crimes and the charged crimes. The trial court reasoned:

> [T]he State was prohibited from mentioning the Defendant's 2009 burglary conviction during the trial. Instead, the State was required to simply refer to the conviction as "a felony conviction that carries more than a year." There is nothing about that characterization of the prior conviction to make it similar to the offense that the Defendant faced. As to the strong-arm robbery and breaking into motor vehicles charges, there is no indication that any of those charges involved the use of a deadly weapon (a crucial element of the burglary charge), or that they involved entering someone's home (also an element of the burglary charge). Despite defense counsel's claim, there is no similarity between the prior convictions and the offenses for which the Defendant was on trial in this case.

The court of appeals did not address this factor.

First-degree burglary is defined, as applied to this case, as entering "a dwelling without consent and with intent to commit a crime in the dwelling" and "when, in effecting entry or while in the dwelling or in immediate flight, he or another participant in the crime . . . is armed with a deadly weapon." S.C. Code Ann. § 16-

11-311(A)(1)(a) (2015). "Strong armed robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear." *State v. Rosemond*, 356 S.C. 426, 430, 589 S.E.2d 757, 758 (2003). The Georgia breaking and entering into an automobile convictions are violations of section 16-8-18 of the Georgia Code (2018), which provides: "If any person shall enter any automobile or other motor vehicle with the intent to commit a theft or a felony, he shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than five years, or, in the discretion of the trial judge, as for a misdemeanor."

Robinson argues the similarity of his prior convictions to the instant burglary charge weighs against admissibility. He contends the common thread between the burglary charge and the prior convictions is the taking of the property of another. Robinson asserts the jury became aware of his prior stealing habits and his pattern of escalating conduct.

Robinson also points to another similarity between his prior convictions and the charged offense that he contends requires exclusion of the prior convictions—his brother being with him during his commission of the prior crimes and the charged crime. The State cross-examined Robinson on this point, but Robinson did not object to that line of questioning; therefore, this narrow argument is not preserved for our review. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) (providing an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court in order to be preserved for appeal).

The trial court did not abuse its discretion in analyzing the similarity factor as it did. Robbery and breaking and entering into automobiles involve different conduct than burglary and possession of a weapon during the commission of a violent crime, and neither the robbery nor the breaking into automobiles involved being armed with a deadly weapon or entering a dwelling. The fact that breaking and entering automobiles and first-degree burglary both involve entering into someone's property without consent was not, in the trial court's judgment, a determinative factor. Neither was the fact that robbery and burglary are overly similar just because, according to Robinson, most burglaries are undertaken with an eye towards stealing something. In this case, the trial court's limiting instruction sufficiently addressed Robinson's fear that the evidence would be inappropriately used as propensity evidence. The trial court acted within its discretion in weighing this factor as it did.

### 4. The importance of the defendant's testimony.

Robinson's defense at trial was an alibi defense. When analyzing the importance of Robinson's testimony, the trial court reasoned:

> Given the fact that the Defendant's testimony was entirely cumulative to the testimony of the other two defense witnesses, it was not necessary for the Defendant to take the stand in his defense. In fact, the only thing the Defendant testified to that his other witnesses did not confirm was that he [Robinson] had bought marijuana from Mr. Williams at the home prior to the date of the burglary.

The court of appeals did not address this factor.

Robinson argues the trial court's evaluation of the importance of his testimony ignored the constitutional significance of his right to testify in his own defense and the State's efforts to undermine his alibi defense. He contends there is often a no more powerful witness for the defense than the defendant himself. Robinson argues, "To characterize [his] testimony as cumulative because he presented other alibi witnesses is far too simplistic." Robinson contends the "most compelling portion" of his testimony was his explanation that he had taken responsibility for his past crimes, as well as noting his lack of motive to steal. He maintains the importance of his testimony increased the potential prejudice of admitting his prior convictions and should have weighed against their admission.

The trial court acted within its discretion in analyzing this factor. Robinson's direct examination was brief; his testimony largely echoed the testimony of his brother and cousin, who were both able to communicate the alibi upon which Robinson's defense relied. Though Robinson communicated a couple of additional points, his testimony was largely cumulative to that of other witnesses. *See Brooke v. United States*, 385 F.2d 279, 285 (D.C. Cir. 1967) (finding there was no abuse of discretion in ruling a defendant's prior convictions could be used for impeachment in the event he testified because defendant would have given a version that was substantially the same as the version given by another defense witness).

Additionally, Robinson's testimony was not necessary to explain his mindset at the time of the alleged crime. *Cf. United States v. Smith*, 181 F. Supp. 2d 904, 910 (N.D. Ill. 2002) (finding the importance of a defendant's testimony was enhanced when the State was required to prove his intent to defraud, thus, this factor

cut against the admission of the defendant's prior convictions). With or without Robinson's testimony, the jury had to resolve the issue of Williams' credibility, since his testimony was the only direct evidence of Robinson's guilt.

Robinson also contends the trial court ignored his argument that it was important for him to testify so he could explain to the jury that his prior convictions were guilty pleas, which showed he admits responsibility for the crimes he commits, and that his refusal to plead to the instant charges would tend to establish he was not guilty of the instant charges. This argument is quite illogical. Following Robinson's rationale to its logical extreme, he should <u>want</u> the prior convictions to be introduced so he could explain to the jury that he accepts responsibility when he is guilty but denies responsibility when he is not guilty.

Robinson also cites authority discussing the constitutional right of an accused to testify in his defense regarding criminal matters. A defendant's right to testify is indeed fundamental. *See, e.g.*, *State v. Rivera*, 402 S.C. 225, 241, 741 S.E.2d 694, 702 (2013) (declaring a criminal defendant's right to testify is a well-established right in South Carolina). However, this right does not preclude the State from impeaching a defendant's credibility with prior convictions. If the defendant's right to testify were to trump all other considerations relevant to *Colf* and Rule 609, then a defendant could never be impeached with prior convictions. The trial court did not abuse its discretion in weighing this factor as it did.

### 5. The centrality of the credibility issue.

Acknowledging the lack of physical evidence in this case, the trial court found the credibility of Williams, Robinson, and Robinson's other witnesses "was central to the case." The trial court explained this factor weighed in favor of admitting Robinson's prior convictions. However, the court of appeals disagreed, explaining it was error for the trial court to find this factor weighed in favor of admitting the prior convictions "because our courts are hesitant to admit evidence of prior convictions when credibility is central to the case." The court of appeals relied on *Green v. State*, 338 S.C. 428, 433-34, 527 S.E.2d 98, 101 (2000), for this proposition.

In *Green*, we affirmed the post-conviction relief (PCR) court's finding that defense counsel was ineffective for failing to argue the probative value of the defendant's prior convictions for possession of crack cocaine was outweighed by their prejudicial effect pursuant to Rule 609(a)(1), when the defendant was on trial for distributing crack cocaine within proximity of a school. 338 S.C. at 432, 527 S.E.2d at 100. We noted the novelty of the issue: "whether the probative value of a

prior conviction, similar to the crime charged, not involving dishonesty or false statement, outweighs its prejudicial effect, where credibility is critical." *Id.* at 432-33, 527 S.E.2d at 100. After listing the *Colf* factors and noting the trial court should have considered them, we reasoned:

> In the instant case, evidence in the record supports the PCR court's ruling that [the defendant] was prejudiced by defense counsel's failure to argue the prejudicial effect of the convictions outweighed their probative value. [The defendant] was impeached with evidence of two convictions for possession of cocaine that were four and five years old. His credibility was critical, as the jury had to choose between his version of events and that of the SLED agents.

*Id.* at 433-34, 527 S.E.2d at 101.

The court of appeals' analysis and reliance on *Green* is flawed. In *Green*, we were primarily concerned with the similarity of the prior convictions to the current charges. Further, we did not make a ruling as to which direction the credibility factor would turn, only recognizing "credibility was critical." This analysis did not constitute a broad conclusion that our courts are hesitant to admit evidence of prior convictions when credibility is central to a case.

Robinson also argues the following statement in *Bryant* supports the court of appeals' proposition: "[T]he State should not be allowed to attack the defendant's credibility with inadmissible prior convictions; especially where the [defendant's] credibility was essential to his defense." 369 S.C. at 518-19, 633 S.E.2d at 156. Importantly, Robinson overlooks our use of the word "inadmissible" in this passage. We made this statement in *Bryant* during a harmless error analysis. It goes without saying that an "inadmissible" conviction should never be admitted into evidence.

Contrary to the court of appeals' conclusion, when credibility is central to a case, the introduction of prior convictions for impeachment purposes becomes even more legitimate. Rule 609 is entitled "Impeachment by Evidence of Conviction of Crime." Attacking the accused's credibility forms the entire basis for a party seeking introduction of prior conviction evidence under Rule 609. If the jury must choose between the defendant's credibility and that of another witness, there would be a high probative value in admitting evidence of prior convictions to impeach the defendant's credibility. On the other hand, if credibility is not central to the case,

then the prior convictions would have less probative value, and the risk of a jury improperly using the prior convictions in an inappropriate manner, despite a limiting instruction, could be higher.

Other jurisdictions favor admissibility when witness credibility is central to a jury's deliberation. *See, e.g.*, *United States v. Jackson*, 696 F.2d 578, 589 (8th Cir. 1982) (finding the probative value of a prior conviction was further enhanced by the critical role a defendant's credibility would have played if he had chosen to testify); *United States v. Caldwell*, 760 F.3d 267, 287-88 (3d Cir. 2014) (providing that when credibility is important, this factor weighs in favor of admissibility); *United States v. Smith*, 181 F. Supp. 2d 904, 910 (N.D. Ill. 2002) ("[C]redibility will be critical. This factor tilts significantly in favor of admitting the prior convictions."); *State v. Swanson*, 707 N.W.2d 645, 655-56 (Minn. 2006) ("Because credibility was a central issue here, the fourth and fifth [] factors weigh in favor of admission of the prior convictions."); *Jordan v. State*, 592 So. 2d 522, 524 (Miss. 1991) ("The importance of the defendant's credibility weighs in favor of admissibility of the prior convictions."); *State v. Bohe*, 447 N.W.2d 277, 281 (N.D. 1989) ("[I]n light of the nature of [the defendant's] prior felonies and of the fact that the credibility of the witnesses was the main issue in the case, the probative impeachment value of [the defendant's] prior felony convictions appears to outweigh the prejudicial effect of their admission into evidence.").

The trial court did not abuse its discretion in weighing this factor as it did.

## IV.  CONCLUSION

The trial court did not abuse its discretion in evaluating the *Colf* factors as it did and in concluding Robinson's prior convictions were admissible under Rule 609(a)(1), SCRE.  In any given case involving the same indicted charges, two different trial courts could examine the same prior conviction(s), evaluate the same five *Colf* factors, and perhaps reach opposite conclusions as to the admissibility of the prior convictions.  In such an instance, it is conceivable that under our standard of review, both trial courts would be affirmed.  This is the nature of our standard of review in Rule 609(a)(1) cases when a trial court weighs the probative value of a prior conviction against its prejudicial effect.

We affirm the court of appeals' decision to uphold Robinson's convictions for first-degree burglary and possession of a weapon during the commission of a violent crime.  However, we modify the court of appeals' opinion by holding the trial court did not abuse its discretion in admitting Robinson's prior convictions under Rule

609(a)(1), SCRE.  In light of our holding, we need not examine Robinson's harmless error argument.  *See State v. Allen*, 370 S.C. 88, 102, 634 S.E.2d 653, 660 (2006) (declining to address remaining issues when the disposition of a prior issue is dispositive of the appeal).

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., KITTREDGE, FEW, JJ., and Acting Justice Thomas E. Huff concur.**