**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Carnie Norris, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2019-000334

―――――――――

Appeal From Spartanburg County
Roger L. Couch, Circuit Court Judge

―――――――――

Unpublished Opinion No. 2023-UP-406
Heard November 7, 2023 – Filed December 20, 2023

―――――――――

**REVERSED**

―――――――――

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia, for Petitioner.

Gary Howard Johnson, II, of Columbia, for Respondent.

―――――――――

**PER CURIAM:** Respondent Carnie Norris was granted post-conviction relief
(PCR) from his 2009 conviction for armed robbery. This court granted the State of
South Carolina's (the State) petition for a writ of certiorari, wherein the State
argues the PCR court erred in finding Norris's trial counsel was ineffective for

failing to object to the introduction of Norris's prior convictions for robbery and burglary. We reverse the PCR court's order.

## FACTS/PROCEDURAL HISTORY

At Norris's trial in 2009, Andrew Bond (Victim) testified that he and a group of seven high school students were playing Frisbee golf at First Baptist Church in Spartanburg in 2008. The students had permission to play Frisbee golf from the church security guard. While playing, the Frisbee landed on the roof of a building and a student retrieved it from the roof and threw it towards Victim on the ground below. Victim testified that as he bent down to pick up the Frisbee, Norris appeared, pushed him from behind, and told him he was under arrest. Norris claimed to be a security officer. Victim stated Norris took Victim's wallet and put a knife to Victim's throat while he was on the ground. Victim's friends, Herbert Blankenship and Daniel Mayfield, approached and Norris told them to get on the ground. Blankenship and Mayfield testified Norris pointed the knife at them and that they saw Norris with Victim's wallet. Blankenship, Mayfield, and the others ran off to call the police. Victim testified Norris told him that if he tried to escape, he would kill him. Victim stated Norris took his cell phone and removed cash, a debit card, and other cards from his wallet.

Officer Bradford James of the Spartanburg police testified he arrived on the scene in response to "a call for a disturbance with weapons" and observed Victim on the ground with Norris standing over him "in an intimidating fashion." Officer James saw Norris thrust Victim's cell phone back to him before going to stand on the porch of a house across the street. Officer John Michael Guest testified he was the second officer to arrive at the scene in response to a call for a disturbance with weapons. Victim identified Norris to police as the man who robbed him. The police questioned Norris and another man, co-defendant Chiles, on the porch of the house. The officers testified Chiles handed them Victim's cards from the wallet and they found a knife on Norris. Blankenship and Mayfield identified the knife as the one Norris used to threaten them, and Victim identified it as the one Norris held to his throat. The arresting officers testified that the other Frisbee players told them they saw Norris rob Victim and then walk across the street to stand on the porch.

Before Norris's testimony at trial, the State set forth its intent to impeach Norris with two prior convictions, and trial counsel did not object. The following exchange occurred.

**The Court:** Ms. Jones, do you have any convictions that [the State] has referenced with [Norris] that you contend should not be permitted for impeachment purposes?

**Trial Counsel:** No, sir, Your Honor. The two that [the State] has spoken of, he has provided me documentation. And to clarify for the Court, these will be the only two that are qualifiable and impeachable. Is that correct?

**The State:** That is within the last ten years, Your Honor. Obviously, both of them have records beyond that, but I understand under the rules I can't ask them about that.

**Trial Counsel:** And that would be a 1996 common-law robbery and a 1995 burglary second nonviolent.

**The Court:** Okay.

On direct examination, Norris affirmed that he had been convicted of burglary in 1995 and was convicted of robbery a few months later. Turning to the Frisbee golf incident, Norris stated that he saw the high school students on the roof of a building and thought it was a possible break-in, so he attempted a citizen's arrest. He denied having Victim's wallet or cell phone and denied pulling a knife on anyone.

The trial court comprehensively instructed the jury about the admission of Norris's prior convictions, stating in part:

> Now, during the course of this trial you have heard certain evidence relating to a defendant having prior convictions . . . that evidence may be used for a very and strictly limited purpose . . . you may consider such evidence on the issue of the credibility or believability of a defendant . . . but you may not consider it for any other purpose. It is not being introduced as evidence of a defendant's guilt for the crime for which he now stands charged, and you are not permitted to consider it on that issue.

The jury found Norris guilty of armed robbery, and the trial court sentenced him to twenty-eight years' imprisonment. On direct appeal, this court dismissed Norris's appeal pursuant to *Anders v. California*.[1] *See State v. Norris*, Op. No. 2012-UP-226 (S.C. Ct. App. filed Apr. 18, 2012). Norris filed a PCR application alleging trial counsel was ineffective by "impeaching [Norris] with a 1995 burglary second and a 1996 common-law robbery conviction."

In its order granting Norris PCR, the PCR court ruled that trial counsel was ineffective by failing to oppose the introduction of the two prior convictions and Norris was prejudiced by the ineffective performance. The PCR court stated that "[i]f trial counsel had opposed the introduction of the two prior convictions it is more likely than not that the trial [court] would have excluded the use of those convictions." The PCR court denied the State's Rule 59(e), SCRCP, motion, and this court granted the State's petition for writ of certiorari.

**ISSUE ON APPEAL**

Did the PCR court err in granting Norris post-conviction relief?

**STANDARD OF REVIEW**

"In post-conviction proceedings, the burden of proof is on the applicant to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). "Our standard of review in PCR cases depends on the specific issue before us." *Mangal v. State*, 421 S.C. 85, 91, 805 S.E.2d 568, 571 (2017). "[Appellate courts] do not defer to a PCR court's rulings on questions of law." *Id.* (footnote omitted). "Questions of law are reviewed de novo, and we will reverse the PCR court's decision when it is controlled by an error of law." *Id.* (quoting *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016)).

**LAW/ANALYSIS**

"A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 101 (2013) (citations omitted). To establish a claim for ineffective assistance of counsel, a PCR applicant must show (1) counsel's performance was deficient because it "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's . . .

---

[1] 386 U.S. 738 (1967).

errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-89, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that of course should be followed." *Id.* at 697.

Regardless of whether trial counsel was deficient, the PCR court erred in finding that there was a reasonable probability the outcome of the trial would have been different but for trial counsel's errors. The PCR court's analysis on prejudice stated the prior convictions held no impeachment value because they were not crimes of dishonesty. It also held the convictions were "remote" under Rule 609(b), SCRE. The court noted the similarity of Norris's past conviction for common law robbery to the charged offense of armed robbery. The court observed that Norris's credibility was crucial. The court emphasized the lack of any background information about Norris's past convictions and found the absence of this information cut against the State, reasoning that the lack of information in the record raised the likelihood the convictions would have been excluded.

The State correctly identifies several problems with this analysis. Even if these crimes were not crimes of dishonesty, they would still have impeachment value if Norris's conduct involved deceit, fraud, a false statement, or anything reflecting on his credibility. *See State v. Robinson*, 426 S.C. 579, 599–600, 828 S.E.2d 203, 213–14 (2019). While the convictions were somewhat dated, they were not remote under Rule 609(b), SCRE. Norris had been released from prison roughly five years before trial. The trial court could have found this proximity cut in favor of admitting the evidence. *See id.* at 600, 828 S.E.2d at 214.

The fact that Norris's credibility was central weighs in favor of admitting the evidence, not against it. *See id.* at 606, 828 S.E.2d at 214. A proper objection may have resulted in the circuit court judge "sanitizing" the prior convictions in an attempt to cure unfair prejudice. *See, e.g., State v. Rollins*, 348 S.C. 649, 653, 560 S.E.2d 450, 452 (Ct. App. 2002); *State v. Elmore*, 368 S.C. 230, 239 n.5, 628 S.E.2d 271, 275–76 n.5 (Ct. App. 2006).

We find the PCR court erred in holding the lack of background information about Norris's past convictions against the State. As the applicant, the burden was on Norris to show that a proper objection, and the background information that would certainly have followed the objection, would have yielded "a reasonable

probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Terry v. State*, 394 S.C. 62, 66, 714 S.E. 2d 326, 329 (2011) ("A PCR applicant bears the burden of establishing he is entitled to relief.").

Further, as our supreme court has noted, "Whether the improper introduction of this evidence is harmless requires us to look at the other evidence admitted at trial to determine whether the defendant's 'guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached.'" *State v. Broadnax*, 414 S.C. 468, 479, 779 S.E.2d 789, 794 (2015) (quoting *State v. Brooks*, 341 S.C. 57, 62–63, 533 S.E.2d 325, 328 (2000)). Here, Victim and two witnesses testified Norris threatened Victim with a knife and took his wallet. They all identified the knife that was found on Norris as the same knife he used to threaten them. Officer James and Officer Guest responded separately to a call for a disturbance with weapons, indicating the presence of a knife. Officer James saw Norris standing over Victim in an intimidating manner. The witnesses saw Norris walk from Victim to the porch across the street, where his co-defendant handed police the items from Victim's wallet a few minutes later. Accordingly, we find the evidence admitted at trial shows Norris's guilt was conclusively proven by competent evidence, such that the jury could reach no other rational conclusion.

Accordingly, the order of the PCR court is

**REVERSED.**

**WILLIAMS, C.J., and HEWITT and VERDIN, JJ., concur.**