628 S.E.2d 271

**The STATE, Respondent,**

v.

**David Bernard ELMORE, Appellant.**

No. 4082.

Court of Appeals of South Carolina.

Submitted Jan. 1, 2006.
Decided Feb. 21, 2006.
Rehearing Denied April 20, 2006.

C. Rauch Wise and Robert J. Tinsley, both of Greenwood, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Special Assistant Attorney

General Amie L. Clifford, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

KITTREDGE, J.:

David Bernard Elmore appeals his conviction and sentence for possession with intent to distribute marijuana. Elmore argues the trial court erred in failing to grant his motion for a directed verdict and erred in ruling the State could use two prior drug convictions for impeachment if he testified. We affirm.

## FACTS

On December 16, 2001, Deputies Mike Rushton and Chuck Padgett of the Saluda County Sheriff's Office were on patrol on Highway 178 in Saluda County. The deputies observed a white Cadillac cross the center line. The deputies suspected the driver of the Cadillac was driving under the influence and pulled the car over.

After the car was pulled over, the deputies noticed several bags fly out of the vehicle's passenger side window. Deputy Rushton approached the car and asked the driver (and sole occupant), David Bernard Elmore, for his driver's license. Elmore did not have a license and was arrested for driving without a license.

The deputies searched Elmore, the car, and the ground around the car. Eight small plastic sandwich bags, each containing a green leafy substance, were found on the side of the road; one larger bag, containing a similar substance, was found in the Cadillac's center console. Elmore was carrying $653 in cash in his pockets. The deputies found no marijuana residue, no evidence of marijuana being smoked in the car, and no drug paraphernalia—"no cigarette lighters, no matches, no marijuana smoking pipes or anything of that nature . . ., no rolling papers, [and] no blunts."

Testing confirmed the leafy substance was marijuana, and Deputy Rushton testified that the street value of each bag ranged from ten to thirty dollars. The total weight of the marijuana was 27.55 grams. Investigator Joe Collier testified that four of the bags were virtually identical in weight. El-

more was charged with possession with intent to distribute marijuana.

At the close of the State's case, Elmore argued the State failed to prove the element of intent and moved for a directed verdict. The trial court found the State "submitted evidence that could be viewed by the jury as intent to distribute" and denied the motion.

The trial court then informed Elmore of his right to testify and explained that his prior convictions may be "brought up" if he testified. The Solicitor informed the trial court of the State's desire to question Elmore about two prior drug convictions: a 1995 conviction for possession of crack cocaine; and a 2001 conviction for possession with intent to distribute marijuana. Elmore contended the convictions were prejudicial and objected to their admission. Specifically, Elmore argued the marijuana conviction should not be allowed because it is "unduly similar" and cited *Green v. State*, 338 S.C. 428, 527 S.E.2d 98 (2000), and *State v. Colf*, 337 S.C. 622, 525 S.E.2d 246 (2000). The trial court summarily noted the objection and found the State could ask about both convictions if Elmore testified. Elmore elected not to testify.

Elmore was found guilty of possession with intent to distribute marijuana and sentenced. This appeal followed.

## LAW/ANALYSIS

### I. Denial of Motion for a Directed Verdict

■ Elmore argues the trial court erred in not granting a directed verdict because there was insufficient evidence to establish an intent to distribute marijuana. We disagree.

■ "On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State." *State v. McHoney*, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001). The trial court, in a directed verdict motion, is concerned with the existence or nonexistence of evidence, not with its weight. *State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004). This standard remains constant even when the State relies exclusively on circumstantial evidence. *Id.* "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense

charged." *McHoney*, 344 S.C. at 97, 544 S.E.2d at 36. A trial court should grant a directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. *State v. Mitchell*, 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000). However, "[i]f there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury." *McHoney*, 344 S.C. at 97, 544 S.E.2d at 36.

Section 44-53-370(d)(3) of the South Carolina Code (Supp.2004) creates a "permissive inference to be considered by the jury" that possession of more than twenty-eight grams or one ounce of marijuana constitutes possession with intent to distribute.[1] *State v. Andrews*, 324 S.C. 516, 522, 479 S.E.2d 808, 812 (Ct.App.1996). However, "conviction of possession with intent to distribute does not hinge upon the amount involved." *State v. Adams*, 291 S.C. 132, 134, 352 S.E.2d 483, 485 (1987). "Possession of any amount of controlled substance coupled with sufficient indicia of intent to distribute will support a conviction for possession with intent to distribute." *State v. James*, 362 S.C. 557, 561-62, 608 S.E.2d 455, 457 (Ct.App.2004).

Although we find no South Carolina precedent directly on point, we do find instructive two cases with overlapping features. In *State v. Robinson*, 344 S.C. 220, 224, 543 S.E.2d 249, 250 (Ct.App.2001), and *State v. Cherry*, 361 S.C. 588, 594-95, 606 S.E.2d 475, 478 (2004), sufficient evidence of the intent to distribute was found to withstand motions for directed verdicts. In *Robinson*, the court found sufficient indicia of intent to distribute when the State presented testimony from police officers that a user of cocaine would not typically possess seven rocks of cocaine, that a dealer is not typically found with scales or individual baggies in his possession, and that a dealer typically wraps crack cocaine as Robinson did. *Robinson*, 344 S.C. at 224, 543 S.E.2d at 250.

In *State v. Cherry*, 348 S.C. 281, 559 S.E.2d 297 (Ct.App. 2001) (en banc), *aff'd in result*, 361 S.C. 588, 606 S.E.2d 475 (2004), this court found sufficient evidence of the intent to

---

1. This section has subsequently been amended and the pertinent language is currently in section 44-53-370(d)(4). *See* 2005 Act No. 127, § 4 (eff. June 7, 2005).

distribute to withstand a motion for a directed verdict where: (1) the arrest occurred in a high crime area; (2) defendant possessed eight rocks of crack cocaine; (3) defendant possessed no drug paraphernalia; (4) defendant possessed $322 in cash, predominantly in twenty dollar bills; and (5) testimony provided that a single rock of crack cocaine is typically sold for twenty dollars. *Cherry*, 348 S.C. at 285, 559 S.E.2d at 299. Our supreme court granted a writ of certiorari to review this court's opinion in *Cherry*, and the majority opinion affirmed this issue,[2] holding the above combination of factors was sufficient to submit the charge of possession with intent to distribute to the jury. *Cherry*, 361 S.C. at 594–95, 606 S.E.2d at 478. The majority further held that, when reviewing a directed verdict motion, the trial court is not required to find the evidence infers guilt to the exclusion of any other reasonable hypothesis. *Id.* at 594, 606 S.E.2d at 478.

Elmore argues the facts of this case more closely mirror those in *State v. James*, 362 S.C. 557, 608 S.E.2d 455 (Ct.App. 2004), where this court found evidence was insufficient to submit to the jury a possession with intent to distribute charge. We disagree.

We believe the facts of the case before us more closely line up with those in *Robinson* and *Cherry*. The overlapping features include the number of "baggies" containing drugs, the method of individual packaging, the amount of cash found on Elmore, and the complete absence of drug paraphernalia. Conversely, *James* is readily distinguishable. In *James*, two of the reasons this court found insufficient evidence of intent were: (1) James did not have a large amount of cash on his person, he only possessed thirty-seven dollars; and (2) the amount of crack cocaine possessed by James was speculative, because the bag containing the crack cocaine was never recovered for evidentiary testing and was only seen briefly by the arresting police officer. *James*, 362 S.C. at 565, 608 S.E.2d at 459.

---

2. The dissent in *Cherry* took no exception to the majority's analysis on the directed verdict issue. 361 S.C. at 602–06, 606 S.E.2d 482–84. The dissent advocated reversal based on a challenge to the jury charge on circumstantial evidence. *Id.* We are not presented with any challenge to the jury charge in the present case.

Viewing the evidence in the light most favorable to the State, as we must, we find the trial court properly denied the directed verdict motion, for a jury question was presented on the element of intent. We construe Elmore's final brief as tacitly acknowledging the presence of a jury question. As Elmore puts it: "The fact that marijuana is commonly sold in small packages also means that marijuana is commonly purchased in small packages. With only nine small bags, the evidence is *just as susceptible* as establishing . . . Elmore had purchased the marijuana in small bags." (emphasis added). We agree that the evidence is reasonably susceptible of two inferences—one of which is consistent with the State's theory of possession of marijuana with intent to distribute, especially in view of the commonality of factors shared with *Robinson* and *Cherry*.[3]

## II. Admissibility of Prior Convictions

Elmore asserts the trial court committed reversible error in ruling the State could impeach him through the use of two prior drug convictions if he testified. We disagree based on supreme court precedent.

 "[W]hen the trial judge chooses to make a preliminary ruling on the admissibility of prior convictions to impeach a defendant and the defendant does not testify at trial, the claim of improper impeachment is not preserved for review." *State v. Glenn*, 285 S.C. 384, 385, 330 S.E.2d 285, 286 (1985). In *Glenn*, the court adopted the United States Supreme Court's reasoning in *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), that "when the defendant does not testify, appellate review is too speculative for several reasons," including:

> the freedom of the trial judge to later alter his ruling; the possibility the prosecution may not have sought to impeach the defendant with the prior convictions; the likelihood that

---

3. In *Cherry*, the court "rejected the contention that in ruling on a directed verdict motion, the trial judge must grant a directed verdict unless the circumstantial evidence pointed conclusively to the defendant's guilt, to the exclusion of every other reasonable hypothesis." *Cherry*, 361 S.C. at 594, 606 S.E.2d at 478, (citing *State v. Edwards*, 298 S.C. 272, 275, 379 S.E.2d 888, 889, *cert. denied*, 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989)).

an adverse ruling might not have been the real motivation for the defendant's decision not to testify; and the inability of the appellate court to review any error for harmlessness. *Glenn,* 285 S.C. at 385, 330 S.E.2d at 285–86. We adhere to the *Luce* preservation rule adopted in *Glenn. See* S.C. Const. art. V, 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents."). Thus, because Elmore did not testify, we find he failed to preserve the question of improper impeachment for review.

Elmore urges a departure from a strict application of *Glenn,* desiring instead a less rigid preservation rule. Some jurisdictions have declined to follow the *Luce* preservation rule. *See generally State v. Galmore,* 994 S.W.2d 120, 123–25 (Tenn.1999) (discussing, for states that have not adopted the *Luce* preservation rule, the two primary alternative approaches to preserving a challenge to a trial court's pre-testimony decision on admissibility of prior convictions for impeachment purposes). As an error correction court, we leave it to our supreme court to determine if a retreat from *Glenn* is warranted.

 We take this opportunity to remind and caution the bench and bar of the inherent prejudice that flows from the use of similar prior convictions for impeachment purposes under Rule 609(a)(1), SCRE. The trial court, in weighing the probative value of prior convictions pursuant to Rule 609(a)(1), SCRE,[4] should consider all relevant factors including but not limited to: "1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) *the similarity between the past crime and the charged crime;* 4) the importance of the defendant's testimony; and 5) the centrality of the credibility issue." *State v. Bryant,* 356 S.C. 485, 490, 589 S.E.2d 775, 777–78 (Ct.App.2003) (citations omitted) (emphasis added). The current state of the law does not mandate the trial court make an on-the-record specific finding "as long as the record reveals that the trial judge did engage in a meaningful balancing of the probative value and the prejudicial effect before admitting

---

4. We recognize that under a precedent of this court, the use of a prior conviction under Rule 609(a)(2), SCRE, does not require a probative value versus prejudice analysis. *State v. Al–Amin,* 353 S.C. 405, 425–27, 578 S.E.2d 32, 43–44 (Ct.App.2003).

a non–609(a)(2) prior conviction under 609(a)(1)." *State v. Scriven*, 339 S.C. 333, 341, 529 S.E.2d 71, 75 (Ct.App.2000). However, as we have urged trial courts, when balancing the probative value of a prior conviction under Rule 609(a)(1) against the prejudicial effect, meaningful appellate review is best achieved when the trial court "articulate[s] its ruling and the basis for it." *Id.* at 342, 529 S.E.2d at 75.

An on-the-record analysis is especially needed when undertaking a balancing that involves a prior similar offense under Rule 609(a)(1). This is because the "the danger of unfair prejudice to the defendant from impeachment by that prior offense weighs against its admission." *State v. Dunlap*, 353 S.C. 539, 542, 579 S.E.2d 318, 320 (2003); *see also, Green v. State*, 338 S.C. 428, 434, 527 S.E.2d 98, 101 (2000) (finding trial counsel's failure to argue that the prejudicial effect of the convictions outweighed their probative value constituted ineffective assistance of counsel and prejudiced the defendant). Indeed, the similarity of a prior crime to the crime charged heightens the prejudicial value of the crime. *State v. Colf*, 337 S.C. 622, 628, 525 S.E.2d 246, 249 (2000). Moreover, for prior similar convictions involving violations of narcotics laws, the prejudicial value is further increased as such violations "are generally not probative of truthfulness," and "this relative lack of probative value should figure prominently in the weighing of prejudice." *Dunlap*, 353 S.C. at 542, 579 S.E.2d at 320. Thus, we strongly encourage trial courts to engage in an on-the-record analysis when admitting such convictions because of the presumption against their admission.[5]

## CONCLUSION

We find the trial court properly denied Elmore's motion for a directed verdict. We adhere to the *State v. Glenn* precedent

---

5. One permissible approach, advocated by the United States Fourth Circuit Court of Appeals, is to allow the prosecutor to ask the witness about the existence of a prior similar conviction under Rule 609(a)(1) without disclosing to the jury the nature of the prior offense. *See United States v. Boyce*, 611 F.2d 530, 531 n. 1 (4th Cir.1979). The *Boyce* approach was approvingly referenced by our supreme court in *Green v. State*, 338 S.C. 428, 433 n. 5, 527 S.E.2d 98, 101 n. 5 (2000). The *Boyce* approach still requires a meaningful balancing of the probative value and prejudicial effect before admission of the prior conviction, although the prejudice occasioned by the similarity of the prior crime to the crime charged is removed.

in holding that Elmore's challenge to the trial court's presumptive ruling concerning the admissibility of his prior drug convictions for impeachment under Rule 609(a)(1) is not preserved for review.

**AFFIRMED.**

STILWELL and WILLIAMS, JJ., concur.