# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Wilton Q. Greene, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2018-000339

---

## ON WRIT OF CERTIORARI

---

Appeal From Berkeley County
Michael G. Nettles, Circuit Court Judge

---

Opinion No. 5991
Heard October 12, 2021 – Filed June 21, 2023

---

## REVERSED AND REMANDED

---

Appellate Defender Joanna Katherine Delany, of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., Assistant Attorney General Joshua Abraham
Edwards, and Assistant Attorney General William Harold
Ray, all of Columbia, for Respondent.

---

**MCDONALD, J.:** Wilton Q. Greene (Petitioner) argues the post-conviction relief
(PCR) court erred in finding he received effective assistance of counsel despite

trial counsel's failure to object to the admission of his prior robbery conviction or request a limiting instruction at his trial for armed robbery and kidnapping. We reverse and remand.

**Facts and Procedural History**

Petitioner went to the Big Lots in Moncks Corner one morning and purchased three grams of crack cocaine. After unsuccessfully trying to resell the drugs, he saw the victim, Bing Ho Zhang, as he was leaving the Big Lots parking lot. According to Petitioner, "I met with Mr. Bing before. I did business with Mr. Bing. . . . [H]e asked me did I have drugs on me. I told him yes. So I asked him could he give me a ride."[1]

Petitioner testified Zhang was initially confused about whether they were going to Bojangles or McDonald's.[2] He claimed Zhang wanted to buy sixty dollars' worth of cocaine but did not have enough money, so Petitioner agreed to hold Zhang's wallet, which contained Zhang's green card, as collateral until he could pay. According to Petitioner, the two men had previously engaged in a similar transaction, and he used a knife to cut pieces of the crack cocaine. Petitioner explained, "I gave it to Mr. Bing. He hit it and then we started driving." He asked Zhang to take him to the bank since Zhang did not seem to know where Bojangles was, but Zhang did not understand and responded: "[O]h I get it[,] you want all the money. You want all the money."

At that point, Zhang "started acting a little funny." Petitioner "kept telling him to go to the bank. He would keep saying I don't got [sic] no money." Although Zhang tried to give him some small bills, Petitioner declined. Instead, Petitioner agreed to hold on to Zhang's wallet until he could pay in full. While they were driving, Zhang saw a police car and swerved towards it. Petitioner stated, "And as soon as he stopped I ran to get the drugs off me; [so] that I could throw the drugs off me." When Petitioner saw the police car, he "was thinking about just getting

---

[1] It is undisputed that Zhang agreed to give Petitioner a ride, and the two men drove away in agreement that Zhang would drop him off at a fast food restaurant.

[2] Zhang, who is originally from China, primarily speaks Mandarin. During Zhang's testimony, the trial court stopped the proceedings and asked the State to find an interpreter, stating: "I don't think he understands what anybody is even asking him, okay."

away from the police because [he] had drugs on [him]." Petitioner admitted he was able to toss the drugs before the police arrested him.

While Zhang testified he agreed to give Petitioner a ride to McDonald's, he claimed that on the way, Petitioner pulled a knife, instructed him to go to a bank, and took his wallet. Zhang then began looking for a police car and when he saw one, he swerved toward it, honking his horn and yelling that he was being robbed. According to Zhang, Petitioner "saw the police and just said shit, the bad word, and then opened the door and [ran] away."

Officer Anthony Judy of the Moncks Corner Police Department was on patrol when Zhang's car came at him "head on" through the median. Officer Judy testified he "locked up the brakes" and jumped out of his car because he feared he was being ambushed. The car stopped about five feet in front of Officer Judy's patrol car, and the driver, who "had a very wild look in his face," then "bailed out yelling he robbed me, he robbed me." A black male passenger exited the car and started running toward the Huddle House. After he saw "how frantic the driver was[, Officer Judy] realized there definitely was a problem and the black male was exiting and leaving the area." So, he returned to his patrol car and began chasing Petitioner. Officer Judy was able to cut Petitioner off in a parking lot and a brief foot chase ensued until Petitioner fell and dropped a knife. When Officer Judy took Petitioner into custody, he found Zhang's wallet and twenty-two dollars in Petitioner's pocket. At that point, Petitioner stated, "[T]his is bull. I asked him to take me to Bojangles and drop me off by the bank beside it." Petitioner told him he was just a "victim of circumstances." The Berkeley County Grand Jury subsequently indicted Petitioner for armed robbery and kidnapping.

At trial, Petitioner observed, "it's my word against his word," and told his trial counsel he wanted to testify.[3] However, trial counsel noted for the record that Petitioner was going to testify "against [his] advice."[4] After questioning Petitioner, the trial court found he "freely, voluntarily, and intelligently" chose to testify.

---

[3] At the PCR hearing, trial counsel agreed the case was a "swearing match" between Petitioner and Zhang.

[4] Trial counsel further testified Petitioner initially told him the incident arose from a drug deal gone bad; however, when he later met with Petitioner to relay a plea offer, Petitioner's account differed.

In response to the trial court's inquiry about Petitioner's prior record, trial counsel reported Petitioner had a prior conviction from 2011 for "strong arm robbery."[5] Neither the State nor trial counsel made any argument regarding the admissibility (or inadmissibility) of Petitioner's prior conviction. Nevertheless, the trial court and trial counsel agreed strong arm robbery "would be an impeachable offense." Without further argument or discussion, the trial court advised Petitioner that the State could ask him about his prior conviction if he testified.

Trial counsel testified he attempted to minimize the prejudicial effect of the prior conviction by questioning Petitioner about it on direct. At the very end of Petitioner's direct examination, trial counsel inquired:

> Q. And you have a conviction?
>
> A. Yes, sir.
>
> Q. What's the conviction for?
>
> A. I pled to strong armed robbery.
>
> Q. No further questions.

Prior to the court's jury charge, the parties had a "very informal charge conference." There was no limiting instruction addressing Petitioner's prior similar conviction, nor was one requested. Before submitting the case to the jury, the trial court asked the parties if they had any exceptions to the charge as given. Trial counsel responded, "No, Your Honor."

The jury deliberated for five and a half hours before sending a note asking, "Is there a possibility of a lesser included charge?" After receiving an answer in the negative, the jury sent another note requesting to rehear (or be provided a copy of) Petitioner and Zhang's testimonies, which were replayed for the jury. The jury then sent a third note stating, "We would like to see the police report of the

---

[5] "Common law robbery and 'strong arm' robbery are synonymous terms for a common law offense whose penalty is provided for by statute." *State v. Rosemond*, 348 S.C. 621, 628, 560 S.E.2d 636, 640 (Ct. App. 2002), *aff'd as modified*, 356 S.C. 426, 589 S.E.2d 757 (2003).

incident and transcript." The trial court replied that because neither the transcript nor the police report was admitted into evidence, it could not provide them.

Finally, the trial court alerted counsel, "[t]he jury sent in a note saying they're decided on one charge, deadlocked on another. They [have] voted three times; some are unwavering." The court accepted and sealed the verdict on one charge and gave an *Allen* charge[6] as to the second. The jury then deliberated another hour before finding Petitioner guilty as indicted. At sentencing, Petitioner maintained the incident was "a misunderstanding." The trial court sentenced him concurrently to twenty years' imprisonment for armed robbery and twenty years for kidnapping.

Petitioner timely appealed his convictions and sentences, which this court affirmed by unpublished opinion in *State v. Greene*, Op. No. 2015-UP-086 (S.C. Ct. App. filed February 25, 2015). Petitioner then filed this action for post-conviction relief.

The PCR court heard testimony from Petitioner and trial counsel, who explained his strategy was to "minimize the selling of drugs." Trial counsel did not know why he failed to argue the inadmissibility of Petitioner's prior robbery conviction or seek to limit its similarity to the offense for which Petitioner was being tried. Trial counsel admitted he has argued in other cases "to change it to just a felony" when a defendant's prior convictions are similar to the crime charged. He noted, "I know I have done that on other cases. I don't know why I didn't do it on this one."

PCR counsel agreed trial counsel had control over strategy decisions but noted Petitioner's testimony that this was a drug deal gone bad, "flew in the face of [trial counsel's] preferred strategy." PCR counsel argued trial counsel was ineffective because he failed to object to the admission of Petitioner's prior conviction; failed to request that the trial court articulate its basis for finding the prior conviction admissible under Rule 609(a)(1), SCRE; and did not request a limiting instruction addressing the purpose for which the jury could consider the prior conviction.

The PCR court denied relief and issued an order of dismissal, finding meritless Petitioner's allegation that trial counsel was ineffective in failing to object to the admission of the prior robbery conviction. The court noted Petitioner's "prior conviction was within the ten-year period allowed under the rules of evidence, and its introduction at trial was not objectionable in any manner other than its potential prejudice as a similar offense with little probative value." Finding trial counsel

---

[6] *Allen v. United States*, 164 U.S. 492 (1896).

was not deficient, the PCR court stated "there can be no resulting prejudice from any alleged deficiency based on the overwhelming evidence against [Petitioner]." The order further stated:

> Although the trial judge in the case at hand did not explicitly place this balancing test on the record at trial, [Petitioner] has not met his burden of showing that the trial judge failed to conduct the balancing test. It is possible that the trial judge conducted the balancing test but did not specifically explain each factor of the test for the record. Trial Counsel credibly testified he saw no reason to object to the admission of the prior conviction at the time of trial. Although he was unsure at the evidentiary hearing why he did not make that argument, he did not believe at the time of trial that an objection was necessary. "[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). This Court finds Trial Counsel's failure to object [or] to request [a] curative instruction was not deficient.

## Standard of Review

"Our standard of review in PCR cases depends on the specific issue before us." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). "We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them." *Id.* "We review questions of law de novo, with no deference to trial courts." *Id.* at 180–81, 810 S.E.2d at 839. "The admission of evidence concerning past convictions for impeachment purposes remains within the trial [court's] discretion, provided the [trial court] conducts the analysis mandated by the evidence rules and case law." *State v. Robinson*, 426 S.C. 579, 591, 828 S.E.2d 203, 209 (2019) (alteration in original) (quoting *State v. Dunlap*, 346 S.C. 312, 324, 550 S.E.2d 889, 896 (Ct. App. 2001)).

## Law and Analysis

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel. *Strickland v.*

*Washington*, 466 U.S. 668 (1984). "In order to establish a claim for ineffective assistance of counsel, the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

## I. Deficiency and Rule 609(a)(1)

Petitioner argues the PCR court erred in finding trial counsel provided effective assistance despite his failure to object to the admission of Petitioner's prior conviction for strong arm robbery because trial counsel testified he did not know why he failed to object to the admission of the prior similar conviction.[7] We agree.

"Rule 609 of the South Carolina Rules of Evidence governs the admissibility of a witness's prior convictions for purposes of impeachment." *Robinson*, 426 S.C. at 592, 828 S.E.2d at 209. It provides, in pertinent part:

> (a) General Rule. For the purpose of attacking the credibility of a witness,
>
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be

---

[7] Armed robbery occurs when one commits robbery "while armed with a pistol, dirk, slingshot, metal knuckles, razor, or other deadly weapon, or while alleging, either by action or words, he was armed while using a representation of a deadly weapon or any object which a person present . . . reasonably believed to be a deadly weapon." S.C. Code Ann. § 16-11-330. Strong arm robbery is a common law crime, which is defined as "the 'felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear.'" *State v. Gourdine*, 322 S.C. 396, 398, 472 S.E.2d 241, 241 (1996) (quoting *State v. Drayton*, 293 S.C. 417, 361 S.E.2d 329, 335 (1987)).

admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; . . .

SCRE 609(a)(1).  Regarding this rule, our supreme court has explained:

> [U]nder Rule 609(a)(1), when the accused chooses to testify during his trial, if the State seeks to introduce impeachment evidence that the accused has been convicted of a crime punishable by imprisonment for more than one year, the evidence is admissible if the State establishes the probative value of admitting the evidence outweighs its prejudicial effect upon the accused.

*Robinson*, 426 S.C. at 593, 828 S.E.2d at 210.

In *State v. Colf*, our supreme court adopted a five-factor test for trial courts to use when weighing whether the probative value of evidence of a defendant's prior convictions outweighs its prejudicial effect:

> 1. The impeachment value of the prior crime.
>
> 2. The point in time of the conviction and the witness's subsequent history.
>
> 3. The similarity between the past crime and the charged crime.
>
> 4. The importance of the defendant's testimony.
>
> 5. The centrality of the credibility issue.

337 S.C. 622, 627, 525 S.E.2d 246, 248 (2000).  "These factors are not exclusive; trial courts should exercise their discretion in light of the facts and circumstances of each particular case."  *Id.*

"The starting point in the analysis is the degree to which the prior convictions have probative value, meaning the tendency to prove the issue at hand—the witness's propensity for truthfulness, or credibility."  *Robinson*, 426 S.C. at 597–98, 828

S.E.2d at 212 (quoting *State v. Black*, 400 S.C. 10, 21, 732 S.E.2d 880, 886 (2012)). "The purpose of the impeachment is not to show the witness is a bad person but rather to show background facts which impact the witness's credibility." *Id.* at 598, 828 S.E.2d at 213.

In *Robinson*, the supreme court ultimately concluded the trial court did not abuse its discretion in weighing the impeachment value of the defendant's prior convictions:

> Even though Robinson's convictions for strong arm robbery and breaking and entering automobiles are not crimes involving dishonesty or false statement within the meaning of Rule 609(a)(2), that does not rule out the existence of impeachment value in each one of these prior offenses. The trial court observed, "Simply put, convictions for breaking into motor vehicles and strong-arm robbery don't imply that the accused was an armed burglar, as was alleged in this case, but they do imply that the accused is not someone to be trusted—that he might not be credible." It was within the trial court's discretion to conclude that because Robinson has prior convictions for such offenses, he legitimately might not be considered credible.

*Id.* at 599–600, 828 S.E.2d at 213–14.

In Petitioner's case, the PCR court explained:

> [Petitioner]'s allegation that Trial Counsel was ineffective for failing to request a Rule 609(A), SCRE, balancing test for his prior conviction for his prior conviction for strong armed robbery is meritless. [Petitioner]'s prior conviction was within the ten year period allowed under the rules of evidence, and its introduction at trial was not objectionable in any manner other than its potential prejudice as a similar offense with little probative value. However this Court finds Trial Counsel was not deficient and there can be no resulting prejudice from any alleged deficiency based on the overwhelming evidence against [Petitioner].

The PCR court recognized the trial court did not specifically articulate the basis for its conclusion that Petitioner's prior conviction was admissible, stating, "It is possible that the trial judge conducted the balancing test but did not specifically explain each factor of the test for the record." We are unable to find support in the record for the conclusion that the required balancing occurred because when the trial court suggested Petitioner's 2011 strong armed robbery conviction was an impeachable offense, trial counsel simply agreed and made no attempt to challenge admissibility. Thus, the trial court did not conduct an on-the-record balancing, presumably because trial counsel acquiesced to the admission of the prior similar conviction. Although trial counsel later testified at the PCR hearing that he generally would challenge the admissibility of such a conviction, he could not explain why he failed to do so in Petitioner's case, which he admitted was a swearing contest. *Contra Smith v. State*, 386 S.C. 562, 567, 689 S.E.2d 629, 632 (2010) ("[W]hen counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel.").

"The current state of the law does not mandate the trial court make an on-the-record specific finding 'as long as the record reveals that the trial judge did engage in a meaningful balancing of the probative value and the prejudicial effect before admitting a non-609(a)(2) prior conviction under 609(a)(1).'" *State v. Elmore*, 368 S.C. 230, 238–39, 628 S.E.2d 271, 275 (Ct. App. 2006) (quoting *State v. Scriven*, 339 S.C. 333, 341, 529 S.E.2d 71, 75 (Ct. App. 2000)). However, "[a]n on-the-record analysis is especially needed when undertaking a balancing that involves a prior similar offense under Rule 609(a)(1)." *Id.* at 239, 628 S.E.2d at 275. "This is because the 'the danger of unfair prejudice to the defendant from impeachment by that prior offense weighs against its admission.'" *Id.* (quoting *State v. Dunlap*, 353 S.C. 539, 542, 579 S.E.2d 318, 320 (2003)); *see also, Green v. State*, 338 S.C. 428, 434, 527 S.E.2d 98, 101 (2000) (finding trial counsel's failure to argue the prejudicial effect of the convictions outweighed their probative value constituted ineffective assistance of counsel and prejudiced the defendant). "Indeed, the similarity of a prior crime to the crime charged heightens the prejudicial value of the crime." *Elmore*, 368 S.C. at 239, 628 S.E.2d at 275.

Petitioner argues trial counsel provided ineffective assistance when he failed to object to the prior conviction's admissibility because the conviction should have been excluded under Rule 609 and *Colf*. The language of *Elmore* and *Green*, *supra*, supports Petitioner's argument. While trial counsel may have believed the court was inclined to admit Petitioner's strong arm robbery conviction for impeachment purposes, this alone does not render his representation effective.

Without any objection—or even a request that the trial court perform the required Rule 609(a) balancing—we cannot know whether the trial court would have admitted the evidence for impeachment purposes. *See, e.g.*, *Robinson*, 426 S.C. at 607, 828 S.E.2d at 217 ("In any given case involving the same indicted charges, two different trial courts could examine the same prior conviction(s), evaluate the same five *Colf* factors, and perhaps reach opposite conclusions as to the admissibility of the prior convictions. In such an instance, it is conceivable that under our standard of review, both trial courts would be affirmed. This is the nature of our standard of review in Rule 609(a)(1) cases when a trial court weighs the probative value of a prior conviction against its prejudicial effect."). In sum, we find no evidence in the record to support the PCR court's finding that trial counsel rendered reasonably effective assistance in merely acquiescing to the admission of Petitioner's prior strong arm robbery conviction. If trial counsel had objected or requested that the trial court perform the balancing test on the record, this may have made a difference to the trial court's decision. Accordingly, the PCR court erred in finding trial counsel's failure to object (or request a balancing analysis) was not deficient performance.

## II. Limiting Instruction

Petitioner next argues the PCR court erred in finding trial counsel provided effective assistance where counsel failed to request a limiting instruction so the trial court could inform the jury of the limited purpose for which a prior conviction may be considered. In Petitioner's view, the lack of such instruction permitted the jury to improperly consider the prior conviction as propensity evidence. We agree.

"Under our system of justice, a conviction must be based upon evidence of the offense for which the accused is on trial rather than prior criminal or immoral acts." *State v. Gore*, 283 S.C. 118, 120, 322 S.E.2d 12, 13 (1984). In *State v. Smalls*, our supreme court explained, "where the evidence of other crimes is admissible only to impeach an accused when he testifies, the court, particularly on request, should instruct the jury that such evidence shall be considered by the jury only on the question of the credibility of the accused, and not to show his guilt." 260 S.C. 44, 47, 194 S.E.2d 188, 189 (1973). There, the supreme court found the trial judge's refusal of "a request to instruct the jury that evidence of [the defendant's] prior criminal record could only be considered on the issue of his credibility as a witness and not upon the question of his guilt" was prejudicial error requiring a new trial. *Id*. at 46, 194 S.E.2d at 189. "Since the jurors were not so instructed, they were free to consider the prior convictions for any purpose, including the probability that [the defendant] committed the crime because he had

demonstrated a prior criminal tendency.  This was highly prejudicial."  *Id.* at 47–48, 194 S.E.2d at 189–90.

In *State v. Bryant*, the trial court committed reversible error when it declined to give a limiting instruction regarding Bryant's prior convictions for housebreaking, conspiracy to commit burglary, and strong arm robbery, which were admitted for impeachment purposes in his trial for distribution of crack cocaine.  307 S.C. 458, 459–61, 415 S.E.2d 806, 807–08 (1992).  In reversing the conviction, the supreme court noted a prior conviction does not need to be similar to the crime charged for a defendant to be entitled to a limiting instruction but recognized "prejudice is even more egregious in such cases."  *Id.* at 461, 415 S.E.2d at 808.

Here, the jury heard Petitioner's testimony regarding his prior robbery conviction not once but twice: during Petitioner's case-in-chief and again during deliberations after the jury asked to rehear the testimonies of Petitioner and Zhang.  In between, the trial court charged the jury on kidnapping and armed robbery.[8]  At no point did the trial court provide—because trial counsel did not request—a limiting instruction regarding the prior conviction.  The similarity between Petitioner's prior conviction for strong arm robbery and the armed robbery charge for which he was on trial was highly prejudicial, particularly in the absence of a limiting instruction addressing impeachment versus propensity.  Thus, when we consider trial counsel's failure to request a limiting instruction coupled with his failure to object to the admissibility of the prior similar conviction in the first instance, we find the PCR erred in finding trial counsel's performance was not deficient.

## III.    Overwhelming Evidence and Prejudice

Relying on *Smalls v. State*,[9] Petitioner argues the PCR court erred in finding overwhelming evidence of guilt where the jury deliberated for over five hours and asked to rehear the testimony of Petitioner and Zhang; the jury said it was

---

[8] We acknowledge Petitioner's own testimony—that this was a drug deal gone bad—illustrated for the jury that he was engaging in illegal activity.

[9] 422 S.C. at 191, 810 S.E.2d at 845 (holding overwhelming evidence of guilt precludes a finding of prejudice only where the evidence provides "something conclusive, such as a confession, DNA evidence demonstrating guilt, or a combination of physical and corroborating evidence so strong that the *Strickland* standard of 'a reasonable probability . . . the factfinder would have had a reasonable doubt' cannot possibly be met.").

deadlocked on one of the two charges, resulting in an *Allen* instruction; and trial counsel admitted the case was a swearing match between Petitioner and Zhang. We agree.

In *Smalls*, the State introduced eyewitness testimony identifying Smalls—who was on trial for armed robbery—as the perpetrator, testimony from a police officer reporting Smalls fled the scene of the crime, and fingerprint evidence establishing Smalls handled the weapon used during the robbery. *Id.* at 179–80, 810 S.E.2d at 838–39. However, our supreme court held the eyewitness testimony and fingerprint evidence were tainted by trial counsel's errors. *Id.* at 194–95, 810 S.E.2d at 847. The court explained, "the strength of the [State's] evidence must be considered along with the specific impact of counsel's errors." *Id.* at 194, 810 S.E.2d at 846. In light of its finding that "Smalls's flight, which is marginally probative and thus has little significance in our analysis[,]" the court determined "the evidence that is not tainted by counsel's errors does not meet the standard for overwhelming evidence we described in *Franklin*—'no reasonable possibility [counsel's errors] contributed in any way to his convictions.'" *Id.* at 195, 810 S.E.2d at 847 (quoting *Franklin v. Catoe*, 346 S.C. 563, 574–75, 552 S.E.2d 718, 725 (2001)).

As to overwhelming evidence, the PCR court here summarized:

> At trial, the victim testified about the entire encounter. The police officer, who met the victim and [Petitioner] at the scene of the crime while it was happening and chased [Petitioner] down the street until he tackled and arrested him, also testified. The State introduced the knife, which [Petitioner] threw away from him as he was being chased, right before he was apprehended. Finally, the victim's wallet with his identification card was found in [Petitioner]'s front pocket as he was arrested and was introduced at trial. Accordingly, this Court finds any error in admitting this prior conviction had no prejudicial effect on the outcome of the trial and [Petitioner] cannot meet the second prong of the *Strickland* test.

In this case, the jury faced competing stories from Zhang and Petitioner—both of whom provided at least arguable explanations for the actions of the parties and the physical evidence Officer Judy retrieved at the scene. Zhang's testimony pointed to an armed robbery and kidnapping, while Petitioner testified the encounter was a

drug deal gone bad complicated by a language barrier. Although Officer Judy witnessed Petitioner exit Zhang's vehicle and flee after Zhang drove toward his patrol car with a "very wild look on his face," Zhang and Petitioner were the only witnesses able to testify as to what may have happened inside the car.

We are not convinced that the probative evidence in the record supports the PCR court's finding of overwhelming evidence under the circumstances in this case. Because Petitioner and Zhang were the only witnesses to their encounter in the vehicle, we cannot say there "is no reasonable possibility [counsel's errors] contributed in any way to [Petitioner's] convictions." *Martin v. State*, 427 S.C. 450, 456, 832 S.E.2d 277, 280 (2019) (quoting *Smalls*, 422 S.C. at 191, 810 S.E.2d at 845). As evidenced by its request to rehear the testimonies of Zhang and Petitioner, its initial deadlock on one count and need for an *Allen* charge, and its inquiry about the possibility of a lesser included offense, the jury clearly struggled with the evidence and with who was telling the truth. *See, e.g.*, *Martin*, 427 S.C. at 457, 832 S.E.2d at 280 (noting that in *Lounds v. State*, 380 S.C. 454, 458–59, 463, 670 S.E.2d 646, 648, 651 (2008), the court found "a jury's questions during deliberations—asking to rehear testimony and jury charges—indicated they were struggling with several aspects of witnesses' accounts"). For these reasons, we find erroneous the PCR court's overwhelming evidence and prejudice findings.

**Conclusion**

Accordingly, we reverse the PCR court's finding that trial counsel provided effective assistance and remand this matter for a new trial.

**REVERSED AND REMANDED.**

**WILLIAMS, C.J., and, LOCKEMY, A.J., concur.**